UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL ROBINSON and SHELTER REALTY LLC,<br><br>     Plaintiffs,<br><br> -against-<br><br>ALPINA INVESTMENTS, INC., SETH ESCHEN, ESQ., and MOHAN TORAMALL,<br><br>     Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**Jury Trial Requested** |

Plaintiffs Carol Robinson and Shelter Realty LLC (hereinafter referred together as the "Plaintiffs"), by their attorneys Hinshaw & Culbertson, LLP, as and for their complaint against Alpina Investments, Inc., Seth Eschen, and Mohan Toramall (collectively, the "Defendants"), allege as follows:

**PARTIES**

1. Plaintiff Carol Robinson ("Robinson") is and at all times hereinafter mentioned was a natural person residing in the State of New York, County of Nassau.

2. Plaintiff Shelter Realty LLC ("Shelter Realty") is and at all times hereinafter mentioned was and still is a limited liability company formed and authorized to do business in the State of New York with a principal place of business at 70 E. Sunrise Highway, Ste 500, Valley Stream, NY 11581.

3. Upon information and belief, Defendant Alpina Investments, Inc. ("Alpina") is a foreign corporation domiciled in the Country of Canada, with a principal place of business at 1710-1170 West Hasting Street, Vancouver, B.C., Canada V6E 2L3.

4. Upon information and belief, Defendant Seth Eschen, Esq. ("Eschen"), is and at all times hereinafter mentioned was a natural person residing in the State of New York, with a principal

place of business at 2 Roosevelt Ave., Suite 200, Syosset, NY 11791.

5.  Upon information and belief, Defendant Mohan Toramall ("Toramall"), is and at all times hereinafter mentioned was a natural person residing in the State of New York, with a principal place of business at 175 Route 25A Floral Park, NY 11001.

## JURISDICTION AND VENUE

6.  This Court has federal question jurisdiction pursuant to 28 U.S.C. 1331 and 18 U.S.C. 1964(a) and (c), as Plaintiffs allege that Defendants engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act. Plaintiffs assert that Defendants conducted or participated in the conduct of an enterprise through a pattern of racketeering activity marked by continuity of structure and purpose over an extended period. The statute expressly provides for federal jurisdiction in actions brought by any person "injured in his business or property by reason of a violation" of 18 U.S.C. 1962. (*See* 18 U.S.C. 1964(c).) Defendant Alpina may be served with process in accordance with Rule 4(k) of the Federal Rules of Civil Procedure and/or pursuant to the applicable provisions of the Hague Convention.

7.  This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367, as those claims are so closely related to the federal claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Venue is proper in this Court because Defendants conduct substantial business in the State of New York, and the claims asserted herein arise directly from Defendants' tortious conduct both within and outside New York that caused injury to persons and property located within the state. Additionally, the primary agreement underlying part of this action expressly provides for venue, as well as for both subject matter and personal jurisdiction, in the State of New York. Venue is further proper pursuant to 18 U.S.C. 1965.

## THE LOAN TRANSACTION

8. Plaintiffs and Defendant Alpina are signatories to a Loan Investment Master Agreement dated April 6, 2023 (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.

9. Plaintiffs understood the Loan Agreement to be a binding contract between the Parties, which was signed by Robinson in her capacity as Managing Direction of Shelter Realty, and Sumer Morren in his/her capacity as Director of Alpina (the "Loan Transaction").

10. Robinson, through Shelter Realty, sought financing in connection with her intended acquisition of two (2) investment properties located at: (i) 147-61 Huxley Street, Rosedale, New York 11587, and (ii) 418 Pine Street, Freeport, New York 11520 (the "Investment Properties").

11. Prior to execution of the Loan Agreement, Plaintiffs were in direct communication with Alpina through Toramall, who was then purportedly employed by, and acting on behalf of, Alpina. Toramall insisted that Plaintiffs not retain an attorney as it was unnecessary and would only slow down the funding process and impede Plaintiffs ability to purchase the Investment Properties.

12. Alpina, through Mohan, assured Plaintiffs that Alpina was a reliable lender that could fund loans in as little as twenty-one (21) business days.

13. Mohan further represented to Plaintiffs that Mohan had full authority on behalf of Alpina to make decisions regarding subject Loan Transaction.

14. To that end, Toramall provided Plaintiffs with a "Key Points" outline of Alpina's loan process (the "Key Points Memo"), which memorialized Alpina's funding procedures and disbursement of loan proceeds. The Key Points Memo also confirmed that Alpina's client's would be indemnified through "Lloyd of London syndicates…[to protect the] client's capital investment, paid for by Alpina and the client [as] the beneficiary (sic)." A true and correct copy of the Key Points Memo is attached hereto as **Exhibit B**.

15. Pursuant to the Loan Agreement, Robinson, through Shelter Realty, was required to deposit the amount of Six Hundred Thousand Dollars ($600,000.00) in escrow with Eschen, an attorney duly admitted to practice law in New York (the "Escrow Deposit"). The Escrow Deposit was defined as a "capital investment" in the Loan Agreement.

16. Under the Loan Agreement, Plaintiffs remittance of the Escrow Deposit was a pre-condition to Plaintiffs receiving an "Initial Draw" of Two and a Half Million Dollars ($2,500,000.00) from Alpina (the "Loan"), which Plaintiffs would use to purchase the Investment Properties.

17. Pursuant to the Loan Agreement, the Escrow Deposit triggered Alpina's obligation to fund the Loan by May 21, 2023.

18. Once funded, repayment of the Loan was to be based on a twenty (20) year amortization schedule with a maturity date of December 1, 2044 and an annual interest rate of 4.25%, which would begin seven (7) months after the Loan funding date but no later than January 1, 2024.

19. Alpina acknowledged in the Loan Agreement the importance of timely payment of the Loan proceeds to Plaintiffs "to assure smooth implementation and development progress."

20. Additionally, the Loan Agreement identified that Alpina's failure to fund the Loan constituted an Event of Default. Upon Alpina's Event of Default, "[Alpina] shall immediately pay Six Hundred Thousand and 00/100 U.S. Dollars ($600,000.00) equal to the amount of funds [Plaintiffs] wire to Seth A. Eschen, Esq…"

21. The Loan Agreement further provided that the Escrow Deposit would be "protected by either an insurance policy or Investment Grade Bond."

## THE STOLEN ESCROW DEPOSIT

22. On April 7, 2023, Plaintiffs, through Robinson personally, fulfilled the obligation under the Loan Agreement by wiring the Escrow Deposit to "Seth A Eschen, Esq., Attorney at Law, IOLA Account". Eschen received the money wired by Robinson. A true and correct copy wire confirmation

for the Escrow Deposit is attached hereto as **Exhibit C**.

23. Pursuant to the Loan Agreement, Plaintiffs also transferred a Twenty-Four Percent (24%) Membership Interest in Shelter Realty to Alpina ("Membership Interest") as collateral for the Loan, which was also to be held by Eschen in escrow.

24. Despite Plaintiffs' compliance with the terms of the Loan Agreement by remitting the Escrow Deposit and transferring the Membership Interest, Alpina failed to fund the Loan despite repeated requests by Plaintiff.

25. On or about July 24, 2023, Plaintiffs issued a Notice of Default to Alpina advising of its failure to fund the Loan pursuant to the terms of the Loan Agreement.

26. Although the Loan Agreement called for the return of the Escrow Deposit where Alpina was in breach, the Escrow Deposit was not returned.

27. On or about August 11, 2023, Plaintiffs contacted Toramall to advise that, despite Alpina's breach, Plaintiffs would be willing to proceed with the Loan Agreement since Robinson was still in contract to purchase the Investment Properties. To that end, Plaintiffs cautioned Toramall that the earnest money deposits made in connection with the Investment Properties were "greatly in jeopardy."

28. Despite Plaintiffs' outreach, the Loan was never funded by Alpina.

29. On or about October 24, 2023, Plaintiffs once again contacted Alpina and Toramall to advise that Plaintiffs would still be willing to proceed with the Loan transaction, and Plaintiffs provided the wire instructions to where the Loan proceeds should be forwarded pursuant to the Loan Agreement.

30. Despite repeated follow up efforts by Robinson and Shelter Realty, Alpina never funded the Loan notwithstanding that Alpina received and accepted the Escrow Deposit and Membership Interest.

31. As a consequence of Alpina's failure to fund the Loan, Plaintiffs defaulted on the contracts to purchase the Investment Properties, which resulted in Plaintiffs sustaining losses of earnest money deposits totaling at least $75,000.00.

32. Upon information and belief, Eschen, acting at Alpina's direction and without Plaintiffs' advance notice or consent, unlawfully released the Escrow Deposit to Alpina despite that Alpina never funded the Loan.

33. Alpina and Mohan induced Plaintiffs to enter into the Loan Agreement, to remit the Escrow Deposit, and transfer the Membership Interest, without any intention of funding the Loan.

34. Alpina and its agents appear to have undertaken similar acts of fraud against other individuals and entities related to loan schemes resulting in lost deposits and other substantial financial damages. (*See e.g., 502 Cortland Road, LLC v Alpina Investments, Inc., et al.,* Case No. 3:24-cv-01018 [NDNY 2024]; *see also Gold Property Partners, LLC v Alpina Investments Inc., et al.*, Index No.: 612551/2024 [Sup. Ct. Nassau County 2024].

35. Alpina and Mohan intentionally misled and defrauded Plaintiffs with the specific intent to harm and damage Plaintiffs by absconding with the Escrow Deposit.

36. Eschen acted in concert with Alpina and Mohan to intentionally harm and damage Plaintiffs by accepting the Escrow Deposit from Robinson, and then releasing same to Alpina, which was unlawful and contrary to the terms of the Loan Agreement.

37. Plaintiffs, and Robinson personally, have been deprived of the return of the Escrow Deposit and have been damaged by Defendants' intentional, deceitful and fraudulent actions.

38. Additionally, contrary to the terms of the Loan Agreement, Alpina intentionally failed to protect the Escrow Deposit through either an insurance policy or other investment bond. No such policy was procured because Alpina had neither the intention nor ability to honor the terms of the Loan Agreement. Thus, the pretext of purporting to obtain such policy was a calculated move by Defendants

to assuage Plaintiffs' concerns, and to expedite Plaintiffs' compliance by remitting the Escrow Deposit.

## FIRST COUNT – FRAUD / FRAUDULENT INDUCEMENT
## AGAINST ALL DEFENDANTS

39. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs numbered "1" through "33" above as if fully set forth at length herein.

40. Defendants knowingly and intentionally made material misrepresentations of existing facts, with knowledge of their falsity, with the intent to induce Plaintiffs' reliance thereon.

41. Defendants knew, or should have known, that the representations made to Plaintiffs about the Loan and Loan Transaction would be reasonably relied upon by Plaintiff.

42. Material portions of those representations and information were false, wrong, and inaccurate, and Defendants knew that those representations and information were false, wrong, and inaccurate (the "Misrepresentations").

43. Defendants fraudulently made the Misrepresentations intending that the Plaintiffs would act on the Misrepresentations and knowing that Plaintiffs were likely to rely on the Misrepresentations which, if erroneous, would cause loss or injury.

44. The content of the Misrepresentations includes, but are not limited to, the following: (a) misrepresenting and/or failing to disclose to Plaintiffs that Alpina would not fund the Loan as contemplated by the Loan Agreement; (b) misrepresenting and/or failing to disclose to Plaintiffs that Alpina would not, and never intended to, return the Escrow Deposit remitted by Robinson upon Alpina's default of the Loan Agreement; (c) misrepresenting and/or failing to disclose that Eschen would transfer the Escrow Deposit to Alpina despite that Alpina failed to fund the Loan; and (d) misrepresenting and/or failing to disclose that Alpina would not, and never intended to, insure the Loan Transaction to protect Plaintiffs' Escrow Deposit as set forth in the Loan Agreement.

45. Plaintiffs relied on those Misrepresentations and Plaintiffs' reliance on those Misrepresentations was reasonable and foreseeable.

46. Defendants made those Misrepresentations with the intent to defraud and deceive Plaintiffs, and to induce Plaintiffs' reliance on the Misrepresentations to Plaintiffs' injury, harm, loss, and detriment, and Plaintiffs were in fact misled and deceived by the Misrepresentations, and in fact reasonably relied on the Misrepresentations.

47. The Misrepresentations were false and fraudulent and were known by Defendants to be false and fraudulent when made, and thereafter, were made with reckless indifference in disregard for the truth or falsity of the Misrepresentations, displaying a high degree of moral culpability and manifesting a conscious and reckless disregard for the rights of Plaintiffs.

48. Defendants had actual knowledge as to the Misrepresentations. Defendants had a duty to disclose this material information to Plaintiffs and failed to do so.

49. As a direct, proximate, and foreseeable consequence of Plaintiffs' reliance on the Misrepresentations Plaintiffs have sustained damages in excess of $675,000.00, the exact amount to be proven at trial.

## SECOND COUNT – BREACH OF CONTRACT
## AGAINST ALPINA

50. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs numbered "1" through "49" inclusive, as if fully set forth herein.

51. The Loan Agreement is a valid, enforceable contract between Plaintiffs and Alpina.

52. Plaintiffs performed their obligations under the Loan Agreement.

53. Alpina breached the Loan Agreement by failing to fund the Loan.

54. Plaintiffs had a reasonable expectation that Alpina would satisfy its obligations under the Loan Agreement.

55. Alpina's actions amount to a breach of its obligations under the Loan Agreement and a violation of Plaintiffs' contractual rights thereunder.

56. Plaintiffs have been damaged by Alpina's breach of its obligations under the Loan Agreement, which damage was proximately caused by Alpina's actions and failures to act in compliance with its contractual obligations.

### THIRD COUNT – UNJUST ENRICHMENT
### AGAINST ALL DEFENDANTS

57. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs numbered "1" through "56" inclusive, as if fully set forth herein.

58. Defendants were enriched by Plaintiffs' fulfillment of Plaintiffs' obligations under the Loan Agreement.

59. Defendants were enriched at Plaintiffs' expense.

60. It is against equity and good conscience to permit Defendants to retain what Plaintiffs are seeking to recover in this action.

61. Plaintiffs and Defendants are in privity to each other as part of a contractual relationship.

62. There was a sufficiently close relationship between the parties that caused Plaintiffs' reliance on Defendants' representations and warranties in connection with the Loan Agreement and the express terms of that agreement.

63. There was a sufficiently close relationship between the parties that induced Plaintiffs to enter into, and satisfy their obligations under, the Loan Agreement..

64. Plaintiffs have been damaged by Defendants' breaches of obligations under the Loan Agreement, which damage was proximately caused by Defendants' actions and failures to act in compliance with their contractual obligations.

## FOURTH COUNT – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
## AGAINST ALPINA

65. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs numbered "1" through "64" inclusive, as if fully set forth herein.

66. The Loan Agreement is a valid, enforceable contract between Plaintiffs and Alpina.

67. There was an implied duty of good faith in the performance of the Loan Agreement. The implied covenant of good faith and fair dealing was a pledge that no party to the agreement shall do anything which would have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the agreement do not explicitly prohibit such conduct.

68. Plaintiffs had a reasonable expectation that Alpina would satisfy its express obligations under the Loan Agreement.

69. Alpina's actions and inactions above amount to a violation of the implied covenant of good faith and fair dealing in connection with the Loan Agreement.

70. Plaintiffs have been damaged by Alpina's breach of the implied covenant of good faith and fair dealing.

## FIFTH COUNT – ESCROW BREACH
## AGAINST ESCHEN

71. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs numbered "1" through "70" inclusive, as if fully set forth herein.

72. Eschen acted as escrow agent pursuant to the Loan Transaction and as such, owed a fiduciary duty to Plaintiffs.

73. Eschen received the Escrow Deposit and was required hold such funds consistent with the terms of the Loan Agreement and escrow clauses contained therein.

74. Eschen released the Escrow Deposit to Alpina in contravention of its fiduciary duty to Plaintiffs and in violation of the terms of the Loan Agreement and escrow clauses.

75. Eschen breached his duty as escrow agent.

76. Plaintiffs suffered damages on account of Eschen's misconduct and Eschen is liable to Plaintiffs for the fully value of the Escrow Deposit and all other damages flowing therefrom.

### SIXTH COUNT – CIVIL CONSPIRACY
### AGAINST ALL DEFENDANTS

77. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs numbered "1" through "76" inclusive, as if fully set forth herein.

78. Defendants conspired between and amongst each other to permanently deprive Plaintiffs of the Escrow Deposit.

79. Defendants' conduct included, but is not limited to, fraudulent misrepresentations about the security of the Escrow Deposit in an attorney escrow account and that the Escrow Deposit would be protected through additional insurance or bond to be arranged by Alpina.

80. Defendants never intended to return the Escrow Deposit after Alpina's default, as was required by all the Loan Agreement and relevant documents.

81. Plaintiffs reasonably relied upon these false representations to their detriment.

82. Plaintiffs have sustained damages in excess of $675,000.00, the exact amount to be proven at trial.

### SEVENTH COUNT – CONVERSION
### AGAINST ALL DEFENDANTS

83. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs numbered "1" through "82" inclusive, as if fully set forth herein.

84. Defendants acted in concert to permanently deprive Plaintiffs of the Escrow Deposit without lawful reason, excuse or justification.

85. Defendants conduct was and remains unlawful and intentional.

86. Defendants have converted the Escrow Deposit to the detriment of Plaintiffs for

Defendants' own benefits and refuse to return same despite demand and despite such requirement in the Loan Agreement.

87. Plaintiffs have sustained damages in excess of $675,000.00, the exact amount to be proven at trial.

## EIGHTH COUNT – VIOLATION OF 18 U.S.C. 1961, et. seq.
## AGAINST ALL DEFENDANTS

88. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in Paragraphs numbered "1" through "87" inclusive, as if fully set forth herein.

89. Defendants voluntarily and intentionally devised, or participated in devising, a scheme to defraud Plaintiffs of money.

90. Defendants acted with the specific intent to defraud.

91. It was reasonably foreseeable that interstate wire communications would be used to further Defendants' fraudulent scheme.

92. Defendants, in fact, utilized interstate wire communications—including emails and telephone calls—to execute their fraudulent scheme against Plaintiffs. These communications constituted electronic wire transmissions made with the intent to defraud Plaintiff of the $600,000.00 Escrow Deposit. At all relevant times, Defendants knowingly transmitted these fraudulent communications.

93. Wire fraud is a federal offense that does not require that a defendant personally sent the fraudulent communication or successfully defrauded the victim. It is sufficient to establish either an intent to defraud or knowledge that fraudulent communications were being transmitted.

95. At all relevant times, Defendants were members of an association-in-fact enterprise (the "Enterprise") as defined by 18 U.S.C. 1961(4), which engaged in activities affecting interstate commerce.

96. The Enterprise maintained an ongoing organizational structure and continuity sufficient to pursue its unlawful objectives.

97. Defendants and the Enterprise shared a common unlawful purpose: to defraud investors in New York State by using interstate and international wire communications to induce the deposit of funds into accounts controlled by Defendants.

98. During the relevant time period, Defendants were both associated with the Enterprise and engaged in other business activities that were separate and distinct from it. These legitimate business operations provided a façade of legitimacy that enabled Defendants to perpetrate their racketeering activities.

99. Continuity is demonstrated through the multiple predicate acts alleged herein, which establish a pattern of racketeering activity involving repeated and related offenses. These acts reflect an ongoing threat of continued criminal conduct and demonstrate that such acts were conducted as a regular part of Defendants' business operations.

100. As a direct and proximate result of Defendants' conduct and violations of 18 U.S.C. 1962(c), Plaintiffs have suffered injury to business or property and are entitled to treble damages and attorneys' fees pursuant to 18 U.S.C. 1964(c).

101. The damages suffered by Plaintiffs were reasonably foreseeable and were, in fact, intended and anticipated by Defendants as the natural and probable consequence of their actions.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

(a) Judgment in favor of Plaintiffs;

(b) An award of compensatory damages on Counts I through VIII, in an amount of not less than $675,000.00 to Plaintiff Carol Robinson;

(c) An award of punitive damages against Defendants;

(d) An award of attorneys' fees and costs to Plaintiffs;

(e) An award of pre-judgment and post-judgment interest to Plaintiffs;

(f) An award of treble damages against Defendants on Count VIII;

(g) An order cancelling the Twenty-Four Percent (24%) Membership Interest in Plaintiff Shelter Realty transferred to Defendant Alpina; and

(f) Such other and further relief as the Court deems just and proper

Dated: New York, New York
May 1, 2025

                                     Respectfully submitted,
                                     **HINSHAW & CULBERTSON LLP**

                                     Anthony P. Scali, Esq.
                                     800 Third Avenue, 13th Floor
                                     New York, NY 10022
                                     Tel: 212-471-6200
                                     Email: ascali@hinshawlaw.com
                                     *Attorneys for Plaintiffs*